**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LOUIS J. MANKOWSKI, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No.  01-4574 (JAG) |
| PSEG SERVICES CORP., | : | **OPINION** |
| | : | |
| Defendant. | : | |

**GREENAWAY, JR., U.S.D.J.**

### INTRODUCTION

This matter comes before this Court on the motion of Defendant PSEG Services Corporation ("PSEG", "Defendant", or the "Company") for summary judgment, pursuant to FED. R. CIV. P. 56.  For the reasons set forth below, this Court grants Defendant's motion.

### BACKGROUND

Plaintiff Louis J. Mankowski ("Plaintiff") began his employment as an engineer at Public Service Electric and Gas Company ("PSE&G"), a subsidiary of Public Service Enterprise Group ("PSEG"), on January 28, 1974.  (E.E.O.C. Compl. ¶ 1.)  During his tenure as an employee at PSEG, Plaintiff held the positions of Associate Engineer, Senior Engineering and Supervising Engineer.  (Certification of Louis Mankowski, hereinafter "Mankowski Cert.", ¶¶ 6-9.)  Plaintiff has a bachelor of science degree in mechanical engineering and a master's degree in mechanical engineering.  (Mankowski Cert. App. B.)  In addition, Plaintiff has received a professional engineer's license and stationery engineer Blue Seal Boiler Operator License.  (Mankowski Cert. App. B.)  From 1989 to 1996, Plaintiff held the position of Project Engineer - Environmental in which he aided in the design, procurement, and installation of specific systems and oversaw the

start-up and turnover of the same systems.  (Mankowski Cert. ¶ 7.)  From 1996 until 2001,

Plaintiff held the position of Plant Engineer-Maintenance for Hudson Generating Station.

(Mankowski Cert. ¶ 8.)  In December of 1999, the Fossil Generation Department was transferred

to PSEG Power, LLC ("POWER"), a subsidiary of PSEG and Plaintiff became an employee of

POWER in December of 1999.  (Certification of Joan Wentura, hereinafter "Wentura

Certification," at ¶ 3.)

      **1.**        **Unsuccessful Bids for Promotions**

      In January and March of 2000, Plaintiff applied for the positions of Maintenance

Manager and Project Manager through the Company's internal employment opportunities

posting system.  (E.E.O.C. Compl. ¶ 1l; Wentura Cert. ¶ 6.)  Plaintiff timely applied for these

positions by submitting his resume and a 1997 performance evaluation.  (Mankowski Cert. ¶ 17.)

Plaintiff did not advance to the final round of interviews for either position.  (Wentura Cert. ¶¶

7-11.)  As of the date of his application for both the Maintenance Manager and Project Manager

positions, Plaintiff was 54 years old, had 33 years of experience as an engineer, and had been

with PSEG for 26 years.  (Mankowski Cert. ¶ 17.)

      Frank Lista was Maintenance Manager and Plaintiff's supervisor in or around 1996.

(Mankowski Certification at ¶ 10.)  As Plaintiff's supervisor, Mr. Lista completed the customary

evaluation of Plaintiff's performance.  In 1997, Mr. Lista's evaluation noted that Plaintiff met or

exceeded the standards set forth in the employee performance evaluation form.  (Mankowski

Cert. ¶¶ 12-13.)  In January of 2000, Mr. Lista accepted a lateral position in another location and

his departure resulted in the vacancy of the Maintenance Manager position that prompted

Plaintiff's application.  Immediately prior to his departure, Mr. Lista sent an email to various

PSEG employees informing them that Mankowski would function as "Acting Maintenance

Manager" until a permanent replacement was found.  (Id. at ¶ 14; Pl.'s Br. Opp'n Def.'s Mot. Summ. J. App. D.)

Nineteen employees applied for the Maintenance Manager position and eleven candidates interviewed for the position.  (Wentura Cert. ¶ 8.)   Plaintiff was among the eleven candidates that advanced from the initial screening and participated in the first round of interviews for the Maintenance Manager position.  (Id.)  Ten of the applicants in the initial pool, including Mankowski, were 40 years old or older.  Three of the candidates advanced to the second round of interviews.  A three-person panel interviewed each of the three candidates that advanced to the second round of interviews.  All of the candidates who advanced to the second round of interviews were under the age of forty.  Ronald Rauffer, age 39, was the oldest candidate to advance to the second round of interviews.

Mr. Rauffer ultimately obtained the position of Maintenance Manager and became Plaintiff's supervisor in March of 2000.  At the time, Mr. Rauffer had fourteen years of experience in all aspects of power generating plant operation, maintenance, engineering, and design.  (Resume attached to Certification of Ronald Rauffer, hereinafter "Rauffer Cert.")  Prior to being promoted to Maintenance Manager, Mr. Rauffer was Shift Supervisor and Maintenance Supervisor for Hudson Generating Station, PSE&G for two years (1991-1993) and held various other positions including Lead Engineer, Senior Staff Engineer, Project Engineer, and Principle Engineer.  (Id.)

Twenty-six candidates bid for the two available Project Manager positions in March 2000 and eight candidates were granted interviews based on their related experience and qualifications.  (Wentura Cert. ¶ 9.)  Defendant claims that a matrix with eight fields of data was used to determine which applicants qualified for the position.  (Id.)  Plaintiff was not selected for

an interview for the Project Manager position.  (Id.)  Two candidates, Jonathan Howard and a

lateral candidate, were offered the two available positions for Project Manager.  (Id.)  Mr.

Howard was 32 years of age.  (Id.)

**2.      Allegations of Harassment and Retaliation**

Plaintiff alleges that, at a staff meeting held on or about January 26, 2000, Mr. John

Ribardo, Station Manager for Hudson Generating Station of PSEG, commented that the

"company (PSEG) was looking to fill [the available positions] with young[er] people."[1]  (Pl.'s

Br. Opp. Def. Mot. Summ. J. ¶ 2.)  Plaintiff alleges that employees Donna Miller, Tom Scott,

and Carmen Esteves overheard the comments made by Mr. Ribardo.  (Id.)  Defendants contend

that Mr. Ribardo did make a statement describing the skills and experience that would be

considered valuable for a candidate applying for the available positions, but dispute that Mr.

Ribardo made the alleged discriminatory statement proffered by Plaintiff.  (Def.'s Br. Supp. Def.

Mot. Summ. J. 5.)  In his certification, Mr. Ribardo states that he did talk with the Planner

Analyst at the meeting and remarked that "the company was looking to bring 'fresh' or 'new'

talent into the group." (Ribardo Cert. ¶ 9.)

Plaintiff further alleges that Mr. Rauffer, the candidate who ultimately obtained the

position of Maintenance Manager and became Plaintiff's supervisor, began to harass Plaintiff in

2000.  According to Plaintiff, during staff meetings, Mr. Rauffer harassed him by "repeatedly

asking [him] the same questions . . . and by assigning [him] to planner analyst tasks."

(Mankowski Cert. ¶ 50.)  Plaintiff claims that he felt "humiliated and demeaned" as a result of

_____

[1]      In certain of Plaintiff's submissions to this Court the alleged statement contains the
phrase "young people" and in other submissions the alleged statement contains the phrase
"younger people."

4

the harassment.  (Mankowski Cert. ¶ 50.)

### 3.    Constructive Discharge

Plaintiff sent the President of PSEG a letter, on February 6, 2001, stating that he involuntarily resigned from his employment with PSEG.  (Pl. Br. Opp'n Mot. Summ. J. App. Q.) In his letter of resignation, Plaintiff alleges that he was constructively discharged due to discriminatory treatment based on his age; that he was discriminated against when he was denied promotions and given certain assignments traditionally assigned to someone beneath his position; and that he suffered from retaliatory treatment for raising allegations of age-based discrimination.  (Id.)

Defendant contends that Plaintiff was never demoted and his salary was never reduced. (Def. Br. Supp. Summ. J. at 6.)  Defendant proffers that Plaintiff, in fact, had been promoted several times during his tenure at PSEG.  (Id.)  Moreover, according to Defendant, the assignment Plaintiff complains about, planning specific jobs during outages, was commonly assigned to many associates.  (Id.)

## PROCEDURAL HISTORY

In January of 2001, Mr. Mankowski filed a complaint with the E.E.O.C.  PSEG responded and an investigation ensued.  The E.E.O.C. found that there was no probable cause and issued a Right to Sue letter.  On September 28, 2001, Mr. Mankowski filed a complaint in federal district court alleging that PSEG discriminated against him and retaliated against him based on his age in violation of federal anti-discrimination statutes by refusing to promote him to the Maintenance Manager and Project Manager positions and by failing to act on his complaints of harassment.  Defendant answered Plaintiff's complaint on November 16, 2001 and provided its Rule 26 Disclosures on December 6, 2001.  Written discovery followed, and, on May 20,

2002, Plaintiff was deposed.  By Court order all dispositive motions were to be filed on or before

July 31, 2002.  Defendant filed the instant motion for summary judgment on July 31, 2002.

By an Order of Reassignment issued on December 5, 2002, the matter was transferred

from Judge Bassler to Judge Martini.  (Order of Reassignment, Dec. 6, 2002.)  On January 29,

2003, the parties appeared before Judge Martini for oral argument on Defendant's motion for

summary judgment and Judge Martini granted Defendant's motion.  An order in favor of the

Defendant was entered on January 30, 2003.  (Order Granting Defendant's Motion for Summary

Judgment, January 30, 2003.)  After the expiration of the time for appeals (and no appeal having

been filed), on April 4, 2003,  Judge Martini *sua sponte* recused himself from the matter.

(Order, April 4, 2003.)  This matter was then reassigned to this Court.  On May 15, 2003, the

parties appeared before this Court and Plaintiff requested an adjournment to retain counsel.

Plaintiff retained counsel on May 20, 2003.  This Court permitted additional submissions for and

against the motion for summary judgment.  On August 29, 2003, Plaintiff's counsel submitted a

supplemental Brief in Opposition to Defendant's Motion For Summary Judgment.  Defendant

replied by letter brief on September 18, 2003.  Oral argument was heard on November 19, 2004.

## LEGAL STANDARD

### 1. Summary Judgment

Summary judgment is appropriate where the moving party establishes that "there is no

genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."

FED. R. CIV. P. 56(c).  See Abramson v. William Patterson Coll. of N.J., 260 F.3d 265, 276 (3d

Cir. 2001).

Federal Rule of Civil Procedure 56(c) provides, in relevant part,

"[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Kreschollek v. Southern Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  See Anderson, 477 U.S. at 248.  The moving party "cannot simply reallege factually unsupported allegations contained in his pleadings."  Clark v. Clabaugh, 20 F.3d 1290, 1294 (3d Cir. 1994).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  See Celotex v. Catrett, 477 U.S. 317, 318 (1986); Blackburn v. United Parcel Serv., Inc., 179 F.3d 81 (3d Cir. 1999).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  See Sound Ship Bldg. Co. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir. 1976), cert. denied, 429 U.S. 860 (1976).  At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in the light most favorable to the non-

7

moving party.  See Wahl v. Rexnord Inc., 624 F.2d 1169, 1181 (3d Cir. 1980); Boyle v.

Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998).  The court must award summary judgment on

all claims unless the non-moving party shows through affidavits or admissible evidence that an

issue of material fact remains.  See, e.g., Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F.

Supp. 2d 324, 330 (D.N.J. 2002).

### 2. ADEA

#### a.   *Disparate Treatment - Failure to Promote*

In pertinent part, the Age Discrimination in Employment Act ("ADEA") provides, "[i]t

shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or

otherwise discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment because of such individual's age[.]"  29 U.S.C. § 623(a).

Pursuant to the ADEA, it is unlawful for an employer to discharge an employee who is at least

forty years old because of his or her age.  29 U.S.C. §§ 623(a), 631(a).  When a Plaintiff alleges

that his age was the determining factor in his employer's failure to promote him, pursuant to the

ADEA, Plaintiff must establish a prima facie case of unlawful discrimination.  To state a prima

facie claim under the ADEA, a plaintiff must establish that: (i) he is a member of a protected

class (over 40 years of age); (ii) that he applied and was qualified for a job for which the

employer was seeking applicants; (iii) that despite his qualifications, he was rejected; and (iv)

the employer ultimately filled the position with someone sufficiently younger to permit an

inference of age discrimination.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (citing

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  If the plaintiff succeeds in

establishing a prima facie case, the burden shifts to the defendant to "articulate some legitimate,

non-discriminatory reason for the employee's rejection."  McDonnell Douglas, 411 U.S. at 802.

8

The employer may satisfy the burden by introducing evidence which, taken as true, would allow the factfinder to conclude that there was a nondiscriminatory reason for the unfavorable employment decision.  St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).  The employer need not prove that the tendered reason actually motivated the decision.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  The burden of proving intent remains with the Plaintiff.  Id.

If the defendant employer satisfies the burden, then "the plaintiff must 'submit evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'"  Fakete v. Aetna, 308 F.3d 335, 338 n.3 (3d Cir. 2002). The plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow the factfinder to infer that each of the employer's proffered nondiscriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action.  Fuentes, 32 F.3d at 764-65.

At this stage, however, the burden shifts back to the plaintiff, and the plaintiff must show, by a preponderance of the evidence, that the employer's explanation is pretextual.  Id.  "The test is whether the plaintiff ultimately persuades the factfinder that the employment decision was caused by bias" and that the real reason for the employer's adverse employment decision is discrimination.  Id.

### b.     Harassment

The evaluation of Plaintiff's allegations of harassment, like the allegations of discrimination based on his age, is based on the provisions of Title VII.  Under Title VII, harassment is actionable if "it [is] . . . sufficiently severe or pervasive 'to alter the conditions of

[the victim's] employment and create an abusive working environment.'" <u>Meritor Sav. Bank v.</u> <u>Vinson</u>, 477 U.S. 57, 67 (1986). In analyzing a hostile-environment harassment claim, "courts should consider the totality of the circumstances including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the work performance of the employee." <u>See</u> <u>Aman v. Cort Furniture</u>, 85 F.3d 1074, 1081 (3d Cir. 1996). To establish a claim of harassment under anti-discrimination statutes, a plaintiff must show that: (1) the plaintiff suffered intentional discrimination because of a protected characteristic; (2) the discrimination was severe and pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person with the same protected trait in that position; and (5) the existence of respondeat superior liability. <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469 (3d Cir. 1990) (involving sexual harassment).

### c. *Retaliation*

Under anti-discrimination statutes, it is "an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (i) the plaintiff engaged in protected activity; (ii) the defendant took adverse employment action against the plaintiff; and (iii) a causal link exists between the protected activity and the adverse action. <u>See</u> <u>Kachmar v. SunGard Data Sys. Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997).

###### d.      *Constructive Discharge*

When reviewing a constructive discharge claim under anti-discrimination statutes, "the court need merely find that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign," in order to conclude that a constructive discharge occurred.  <u>Goss v. Exxon Office Sys. Co.</u>, 747 F.2d 885, 888 (3d Cir. 1984).  A finding of specific intent, on the part of the employer, to bring about a discharge is not required.  <u>Id.</u>  A plaintiff may establish a constructive discharge claim by showing that the "harassing behavior" was "sufficiently severe or pervasive to alter the conditions of employment," and that the "abusive working environment became so intolerable that . . . resignation qualified as a fitting response."  <u>Penn. State Police v. Suders</u>, 542 U.S. 129 (2004) (involving an allegation of sexual harassment).

## <u>DISCUSSION</u>

Defendant argues that Plaintiff fails to state a prima facie case of discrimination based on his age because Plaintiff is unable to assert that he was qualified for the positions he applied for, that he was rejected despite his qualifications, and that the positions were filled by candidates who were sufficiently younger to permit an inference of age discrimination.  Defendant proffers a legitimate, nondiscriminatory reason for not hiring Plaintiff for either of the two positions and denies that the Company or any of its employees, demoted, harassed, or retaliated against Plaintiff because of his age or his complaints of age discrimination by Company employees.

## I.      **Refusal to Promote**

A. Maintenance Manager Position

1. Prima Facie Case

To establish a prima facie case of discrimination, Plaintiff must establish (i) he is a

member of a protected class; (ii) that he applied, and was qualified for, a job for which Defendant was seeking applicants; (iii) that despite his qualifications, he was rejected; and (iv) Defendant ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination.  Fuentes, 32 F.3d at 763 (citation omitted); see also Narin v. Lower Marion Sch. Dist., 206 F.3d 323, 331 (3d Cir. 2000).

Defendants argue that Plaintiff is unable to establish a prima facie case of age discrimination, and therefore, Defendants are entitled to a grant of summary judgment as a matter of law.

The primary issue before this Court on Plaintiff's ADEA claim is whether Plaintiff has adduced sufficient evidence to create a genuine issue as to a material fact regarding whether he was qualified for the position.

 In January and March of 2000, Plaintiff applied for a promotion to the positions of Maintenance Manager and Project Manager.  (Mankowski Cert. ¶¶ 17, 39.)  Defendant rejected Plaintiff's application in both instances and selected other candidates.  (Id. at ¶¶ 36, 45.)

At the time of both applications, Plaintiff was 54 years old.  (Mankowski Cert. ¶ 17.)  It is undisputed that Plaintiff was a member of the protected class – he was at least 40 years old at the time of the applications and alleged discriminatory harassment – at the time of his application for the Maintenance Manager and Project manager positions.  See Billet v. Cigna Corp, 940 F.2d 812, 816 n.3 (3d Cir. 1991).  There is no dispute that the eventual successful candidates for these positions –  Mr. Ronald Rauffer and Mr. Jonathan Howard – were not members of the protected class.  (Mankowski Cert. ¶¶ 36, 45).

Plaintiff argues that he was qualified for each of the positions and was rejected for the positions because of his age.  According to Defendant, Plaintiff was not qualified for either

12

position and was rejected on that basis.

The description of the Maintenance Manager position, as posted on the Company's internal employment opportunities database, specifically states that the candidate will be responsible for "managing a multi-disciplined workforce comprised of management and bargaining unit associates" and that the candidate must "[p]rovide leadership on overall site maintenance activities to assure reliable and safe power generation."  (Wentura Cert., App. A.) Available, non-union positions are posted weekly to the Company's internal job opportunity system.  (Id. at ¶ 6 n.1.)  Any associate may self-nominate and apply for a position appearing on the posting system by using a self-service telephone line, and by submitting a resume and a copy of their current performance appraisal.  (Id.)

Plaintiff submitted a timely application for the position of Maintenance Manager; he presented his resume, a 1997 performance evaluation, and an email from the departing Maintenance Manager selecting him to hold the position of "Acting Maintenance Manager." (Mankowski Cert. ¶ 17.)

Defendant argues that Plaintiff lacked the requisite supervisory and leadership experience for the position.  (Wentura Cert. ¶ 8.)  Specifically, Plaintiff also did not qualify for the position because "his background contained project-oriented experience, rather than the plant maintenance experience required."  (Certification of John P. Ribardo, hereinafter "Ribardo Cert.," ¶ 6.)  Defendant further asserts that during Plaintiff's initial interview, his "responses were less substantive and weaker than those of the candidates eventually chosen to go on to the second round of interviews.  (Ribardo Cert. ¶¶ 3-5.)  Plaintiff essentially relies on his three-year old performance evaluations and an email from his departing supervisor, Frank Lista, asking other employees to address maintenance issues to Plaintiff as "acting Maintenance Manager."

13

(Def.'s Br. Supp. Mot. Summ. J. App. C,  D.)

Plaintiff's high marks in several of the categories of competency in the Plant Engineer performance evaluation are laudable.  The commentary by Plaintiff's then-supervisor Frank Lista notes that Plaintiff "holds a vast knowledge of the engineering aspects of Hudson Generating Station" and that he is "especially knowledgeable about the boiler side of the plant." (Id.)

The position description for the Maintenance Manager position, however, notes the following responsibilities: provide and manage overall maintenance requirements of the plant side including short and long term business planning, budget development, labor relations and O&M management, manage a multi-disciplined workforce, provide leadership on overall site maintenance activities, and participate in strategic planning initiatives.  (Wentura Cert. Ex. A.) The Position Description/Requirements for the Maintenance Manager Position discusses at length and in detail the greater diversity of skills and actual management responsibility required for the job.  (Wentura Cert. Ex. A.)  In addition, the description notes that the ideal candidate would have a bachelor of science degree in engineering, familiarity with corporate strategic direction, and a masters degree in business administration.  (Id.)

A careful review of Plaintiff's performance evaluation, however, suggests that Plaintiff's obligations as Plant Engineer were quite distinct from the position requirements in the Maintenance Manager position description.  While Plaintiff's evaluation demonstrates that he met the Company's minimum standards for the position of Plant Engineer, there is no indication from this evaluation that he was qualified for the Maintenance Manager position.  (Wentura Cert. Ex. B; Pl. Br. Opp. Def. Mot. Summ. J. App. C .)

A comparison of Plaintiff's stated qualifications and the Maintenance Manager job

14

description supports the conclusion that Plaintiff was not qualified for the job.  As such, Plaintiff fails to satisfy the second element of the prima facie standard.  See Deane v. Poconos Medical Ctr., 142 F.3d 138, 146 (3d Cir. 1998).

While Plaintiff had performed satisfactorily in his position as Plant Engineer, his responsibilities in that position and the responsibilities of the Maintenance Manager are quite distinct.  Plaintiff's resume does not list any leadership positions held while he was at the Company nor is there any indication that he had graduate education in management or strategic planning – both of which were expressly requested in the Position.  Additionally, the email from Mr. Frank Lista, stating that inquires regarding maintenance management should be forwarded to Plaintiff, failed to indicate that Plaintiff possessed any of the requisite skills.

A bald assertion that Plaintiff qualifies for the Maintenance Manager position does not satisfy the standard for establishing a prima facie case of age discrimination and will not preclude entry of summary judgment.  Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  See Sound Ship Bldg. Co. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir. 1976), cert. denied, 429 U.S. 860 (1976).

This Court finds that Plaintiff has failed to establish the second element of the prima facie claim of age discrimination.  The elements of the prima facie case are conjunctive.  The absence of one element is fatal to Plaintiff's claim.  This Court grants Defendant's motion for summary judgment regarding the claim for refusal to promote to Maintenance Manager.

2.      Pretext

Even if Plaintiff had satisfied all of the elements necessary for stating a prima facie case of discrimination, Defendant has articulated a legitimate, non-discriminatory reason for rejecting Plaintiff for the Maintenance Manager position.  According to Defendant, Plaintiff was not selected for the position because there were more qualified candidates in the applicant pool.

Pursuant to the standard of review for age-based discrimination claims, once a plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason for the employee's rejection."  McDonnell Douglas, 411 U.S. at 802. The employer need not prove that the tendered reason actually motivated the decision.  Texas Dept., 450 U.S. at 253.  If the defendant employer satisfies its burden, then "the plaintiff must 'submit evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Fakete, 308 F.3d at 338 n.3. The burden of proving intent remains with the Plaintiff.  Id.

In the instant case, Defendant has explained that, even assuming that Plaintiff was qualified for the position, the applicant pool contained more qualified candidates and the person ultimately hired for the Maintenance Manager position was more qualified to carry out the responsibilities of that position.  (Def. Br. Supp. Summ. J. 4-5; Wentura Cert. ¶ 8.)  According to Defendant, Plaintiff was unsuccessful in his bid for the Maintenance Manager position because his application did not demonstrate that he had "the level of supervisory/leadership experience, rather than the plant maintenance experience required" and  "Plaintiff did not do well in his initial interview." (Wentura Cert. ¶ 8.)

Moreover, there appears to be a consensus that Plaintiff performed poorly during his

16

initial interview.  According to Defendant, Plaintiff's answers about managerial and leadership issues were less substantive and weaker than the responses of other candidates.  (Ribardo Cert. ¶ 6.)  Plaintiff admits that he was unprepared for the interview, claiming that he was only unprepared because he did not know the interview would take place that at the time that it occurred.  (Mankowski Cert. ¶ 24.)  Plaintiff acknowledges that he responded to a question regarding the managerial vision he had for the position of Maintenance Manager by explaining how he would "focus on preventative maintenance and predictive maintenance."  (Id. at ¶ 26.)  Plaintiff's response to the leadership-oriented question strongly supports Defendant's proffered legitimate rationale that Plaintiff was not selected for the Maintenance Manager position because he lacked an understanding of the dual levels of responsibility associated with the position – the technical understanding of the business and the strategic, managerial role.

This Court concludes that Defendant satisfied its burden of providing a legitimate, non-discriminatory reason by articulating that Plaintiff was not selected for the position of Maintenance Manager because he lacked the requisite skills for the position.

Having found that Defendant satisfied its burden under the second step in the McDonnell Douglas analysis, the third step in the analysis requires that Plaintiff "'submit evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'"  Fakete, 308 F.3d at 338 n.3.

Plaintiff argues that the selection of the three applicants under 40 for the second round of interviews for the Maintenance Manager position "should permit a reasonable fact finder to infer age discrimination."  (Pl. Br. Opp. Def. Mot. Summ. J. ¶ 3.)  Plaintiff further argues that animus may be attributed to the Company's decision not to promote him to the position of Maintenance

Manager because he had already been selected by his supervisor, Frank Lista, to be his successor for the position.

As discussed above, while Frank Lista's email directing inquiries to Plaintiff in his absence is indicative of Mr. Lista's confidence in Plaintiff, the email does not address, inter alia, how Plaintiff might fare in a competitive interview process.  Defendant proffers that "[i]t was common for leaders at the station to temporarily appoint someone to take calls and handle emergencies in their absence."  (Ribardo Supplemental Cert. ¶ 4.)  The Company did not directly participate in or affirm Mr. Lista's decision regarding the temporary appointment.  The team created to hire the departing manager's replacement clearly acted under company directives and examined a different pool of candidates over a different time frame than did Mr. Lista in selecting an interim replacement.  (Id. ¶ 5.) Mr. Lista's email does not purport to address Plaintiff's qualifications for the position of Maintenance Manager nor does it commend Plaintiff to the appropriate person for the position.  A factfinder could not reasonably conclude from the sole email that Defendant's articulated reasons for promoting Mr. Rauffer – he was more qualified – is incredible or that invidious discrimination was the actual reason Plaintiff was not promoted.

In addition, Plaintiff argues that a finder of fact could reasonably conclude that Defendant did not promote him because of an unlawful policy of refusing to promote persons in the protected class.  According to Plaintiff, Mr. Ribardo, Manager of Coal Technology and the hiring manager who screened candidates who applied for the Maintenance Manager position, made two statements that indicate the Company's ageist attitudes and policies.  (Pl.'s Br. Opp'n Def.'s Mot. Summ. J. 5.)  Plaintiff alleges that on January 27, 2000, at a staff meeting, Mr. Ribardo commented that "the company was looking to fill [the Maintenance Manager position]

18

with younger people." (Pl.'s Br. App. A 27:18.)  Plaintiff further alleges that Mr. Ribardo made a comment that the reason an older employee (a member of the protected class) had not yet returned to work was because of his old age and lack of exercise.  (Pl.'s Br. 8; Mankowski Cert. ¶ 48)

In his sworn certification, Mr. Ribardo denied he made the statements Plaintiff alleges and that, while he did mention that the Company was looking for "fresh" and "new" talent, these comments were in no way indicative of an ageist Company policy.

While parties may dispute the phraseology of Mr. Ribardo's statement, this Court finds that this dispute does not preclude summary judgment on the instant motion.  Plaintiff has not presented even a scintilla of evidence that Mr. Ribardo's alleged comment was directed at the candidates applying for the Maintenance Manager position or reflective of a greater Company policy.  A nexus between the alleged discriminatory comment and the unlawful behavior must exist for a reasonable trier of fact to conclude that discrimination motivated the defendant's actions.  Plaintiff directs the Court to interrogatory responses of Mrs. Carmen Esteves and Ms. Donna Miller, employees of the Hudson Generating Station.  (Pl.'s Br. App. H 9.)  While the responses by both women who attended the staff meeting on January 27, 2000, indicate that Mr. Ribardo made a statement about filling lower level positions, neither witness recalls Mr. Ribardo making a statement specifically about the Maintenance Manager position.  (Id.)  Ms. Miller's response, in fact, indicates that she "does not recall the statement being associated with the Maintenance Manager position."  (Id.)

This Court grants Defendant's motion for summary judgment on Plaintiff's allegation that invidious age discrimination motivated Defendant's decision not to promote him to the position of Maintenance Manager.

19

### B.  Project Manager Position

1.      Prima Facie Case

Defendant similarly contends that Plaintiff has failed to set forth a prima facie case of age

based discrimination for refusal to promote him to Project Manager.  Defendant disputes that

Plaintiff was qualified for the Project Manager position.

Twenty-six candidates applied for the Project Manager position and eight candidates

were granted interviews based on their related experience and qualifications.  PSEG used a

matrix comprised of eight categories to determine which candidates would receive an interview.

(Wentura Cert. ¶¶ 8-10.)  Defendant argues that "Plaintiff did not score high enough on the

matrix in comparison to others" to qualify for an interview or the position.  (Wentura Cert. ¶ 9.)

The Project Manager position description posted to the Company's internal job posting

system states that the requirements for the position include: "overall leadership and management

responsibility for multiple projects and outages at Fossil Generating Stations. . . . communicate

clear project vision and direct engineers, vendors and construction contractors."  (Wentura Cert.

App. B.)   The description later lists the following as essential requirements: "[e]xtensive

engineering, construction, supervisory and project management experience as well as technical

and business skills."  (Id.)

According to Defendant, the Project Manager position had a very strong field of

candidates.  (Wentura Cert. ¶ 10.)   Defendant contends that Plaintiff's application for the Project

Manager Position did not reveal the level of multi-disciplined project management experience

that the other candidates possessed; and he lacked the specific construction and project

development experience required of the position.  (Wentura Cert. ¶ 11.)

Plaintiff argues that the matrix used to select the candidates who received interviews

20

incorrectly reflected his skill level. The matrix used the following categories: (1) PM (Project

Manager), (2) Project Support, (3) Project Engineer, (4) Plant, (5) Construction Estimating, (6)

Maintenance, (7) Project Development, (8) Matrix Leadership, (9) Other, and (10) Appraisal.

(Mankowski Cert. ¶ 41).  Plaintiff claims that the PSEG matrix only indicated that Plaintiff had

experience in categories 3, 4, and 10, while Plaintiff alleges that the matrix should have listed

him as having a background in categories 1-10.  (Mankowski Cert. ¶¶ 42-43.)  Plaintiff claims

that his ability to obtain an interview was negatively influenced by his credentials being listed

incorrectly and Mr. Ribardo's participation as one of the interviewers for the Project Manager

position.  (Mankowski Cert. ¶ 44.)

        Presuming that Plaintiff's allegation is correct and his qualifications were stronger than

those indicated in the matrix, the Court is still unable to draw the inference that Plaintiff was as

qualified as the candidates that were selected for the position – particularly noting that the

Defendant states that there was significant competition for the position.  Defendant argues that

the applicant pool was "populated with extremely well qualified people and competition for the

job was exceedingly tight." (Wentura Certification ¶ 10.)

        This Court finds that Plaintiff fails to establish the second and third elements needed to

make out a prima facie case.  Moreover, even if Plaintiff could establish a prima facie case, this

Court finds no genuine issue as to a material fact exists that precludes summary judgment.

Defendant offers a legitimate, nondiscriminatory reason for its selection of Jonathan Howard and

the other successful candidate (a lateral).  While Mr. Howard was age 32 and  "significantly

younger than Mankowski, approximately 20 years his junior" at the time of his promotion to the

Project manager position,  (Pl. Br. Opp. Def. Mot. Summ. J. 7, 13), as of the date of his

application for the Project Manager position, Mr. Howard had "[s]upervisory experience gained

through construction contract administration and supervision of engineering and design personnel." (Pl. Opp. Br. Def. Mot. Summ. J. App. I.)  Plaintiff has not presented grounds from which a trier of fact could reasonably conclude that Defendant's proffered reason is a pretext. Plaintiff has failed to meet this burden, nor has he shown that a genuine issue as to a material fact precludes summary judgment in favor of Defendant on this claim.  Therefore, this Court grants Defendant's motion for summary judgment regarding the claim for refusal to promote him to Project Manager.

## II.    Harassment and Retaliation

To state a claim of harassment under anti-discrimination statutes, a plaintiff must show that: (1) the plaintiff suffered intentional discrimination because of a protected characteristic; (2) the discrimination was severe and pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person with the same protected trait in that position; and (5) the existence of respondeat superior liability.  Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990) (involving sexual harassment).  Under Title VII, discriminatory harassment is actionable if "it [is] . . . sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986).

To state a claim of retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) the defendant took adverse employment action against him; and (3) there is a causal link between the protected activity and the adverse action.  Kachmar v. SunGard Data Sys., 109 F.3d 173, 177 (3d Cir. 1997).  To evaluate whether there remains a genuine issue of material fact as to Plaintiff's claims of harassment and retaliation, this Court reflects upon "the totality of the circumstances including the frequency of the conduct, its severity, whether it is physically

22

threatening or humiliating, and whether it unreasonably interferes with the work performance of the employee."  See Aman v. Cort Furniture, 85 F.3d 1074, 1081 (3d Cir. 1996).

Plaintiff's claims of retaliation and harassment arise out of his allegation that he complained to various PSEG employees about Mr. Ribardo's allegedly ageist, unlawful, and discriminatory comments during the January 27, 2000 team meeting.  Plaintiff alleges that, as a result of his complaints about the alleged discriminatory comments, he was rejected in his bid for the Maintenance Manager and Project Manager positions, he was harassed during staff meetings when he was repeatedly asked the same questions, and assigned lower-level tasks than should have been assigned to someone in his position.  (Mankowski Cert. ¶ 50.)

Drawing all inferences in favor of the non-moving party, Plaintiff, this Court finds that Plaintiff's allegations, even if true, do not support a finding that Plaintiff suffered "materially adverse" changes in the terms and conditions of his employment.  Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001) (recognizing that an "adverse employment action," for purposes of a retaliation claim, may be established by a showing of material changes in the terms and conditions of employment);  Richardson  v. New York State Dept. of Correctional Serv., 180 F.3d 426, 445-46 (2d Cir. 1999).  Plaintiff was never demoted nor was his salary ever reduced.  (Wentura Cert. ¶14.)  Plaintiff never received a negative evaluation; Plaintiff had, in fact, been promoted several times during his tenure at PSEG.  (Id.)  According to Defendant, the assignment Plaintiff received related to planning specific jobs during outages was one that many associates received.  (Wentura Cert. ¶ 14.)

Plaintiff's argument that Defendant's rejection of his applications for the Maintenance Manager and Project Manager positions constitutes discriminatory retaliation does not succeed. As discussed above, Defendant has articulated a legitimate, non-discriminatory reason for the

23

rejection of Plaintiff's applications for these positions.  Plaintiff has failed to show the causal

link between the protected activity and the adverse action required for a retaliation claim under

Kachmar.   This Court finds no genuine issue as to a material fact to preclude summary

judgment in favor of Defendant on the claim of discriminatory retaliation.

Similarly,  this Court finds that  Plaintiff's allegations, even if true, do not support a

finding that Plaintiff suffered severe and pervasive discrimination.  Plaintiff has thus failed to

establish the second element required to make out a harassment claim.  This Court finds no

genuine issue as to a material fact to preclude summary judgment in favor of Defendant on the

claim of discriminatory harassment.

**III.      Constructive Discharge**

A determination that a plaintiff has suffered a constructive discharge does not  require a

finding of specific intent, on the part of the employer, to bring about a discharge.  Goss v. Exxon

Office Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984).  Rather, a plaintiff alleging a constructive

discharge must show that "harassing behavior" was "sufficiently severe or pervasive as to alter

the conditions of employment," and that the "abusive working environment became so

intolerable that . . . resignation qualified as a fitting response."  Penn. State Police, 542 U.S. at

129.  This Court finds that Plaintiff has presented no evidence of "harassing behavior."

Even if all inferences are drawn in favor of the non-moving party, Plaintiff's assertions of

harassment at team meetings and the physical and mental stress he suffered as a result of

Defendant failing to promote him and failure to be responsive to his allegations of discrimination

do not pass muster under this stringent standard.  The conditions Plaintiff describes – repetitious

questioning during staff meetings and assignment of tasks alleged to be beneath Plaintiff's

position – are not tantamount to those found to be "severe and pervasive," or "abusive"

behaviors that fall within the purview of the statute.  Richardson  v. New York State Dept. of Correctional Serv., 180 F.3d 426, 445-46 (2d Cir. 1999).

Based on Plaintiff's failure to offer evidence of severe and abusive treatment, this Court grants Defendant's motion for summary judgment on the issue of constructive discharge.

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court finds that no genuine issues as to any material facts exist to preclude summary judgment and grants Defendant's motion for summary judgment, as a matter of law, on Plaintiff's claims of age discrimination, retaliation and harassment, and constructive discharge.


   S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated:  November 29, 2005